**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **JESSICA THOMPSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | 12-cv-2137 EFM/JPO |
| | ) | |
| **SRA ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

NOW COMES the Plaintiff, JESSICA THOMPSON, by and through her attorneys, LARRY P. SMITH & ASSOCIATES, LTD., and for her complaint against the Defendant, SRA ASSOCIATES, INC., Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.   JURISDICTION & VENUE

2.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4.      JESSICA THOMPSON, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Lawrence, County of Douglas, State of Kansas.

5.      The debt that Plaintiff was allegedly obligated to pay was a debt allegedly incurred by Plaintiff for her personal use and/or for household expenditure.

6.     At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

7.     SRA ASSOCIATES, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Kansas.  Defendant is incorporated in the State of Kansas.

8.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

9.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

10.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

11.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

12.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## IV.  ALLEGATIONS

13.     In or around November 2011, prior to November 15, 2011, Plaintiff suffered an ectopic pregnancy that resulted in the miscarriage of her and her husband's child.

14.     On or about November 15, 2011, as a result of the circumstances delineated in the above paragraph, Plaintiff had to undergo surgery.

15.     On or about November 15, 2011, subsequent to Plaintiff having undergone surgery, Plaintiff went to her parents' residence to recover after her surgery.

16.     On or about November 15, 2011, subsequent to Plaintiff's surgery, and while Plaintiff was at her parents' residence, Defendant initiated a telephone call to Plaintiff at her parents' residence in an attempt to collect a debt Plaintiff allegedly owed.

17.     Plaintiff's husband answered the aforesaid telephone call wherein Defendant asked to speak to Plaintiff.

18.     Plaintiff's husband informed Defendant that Plaintiff was unable to come to the telephone.

19.     Defendant, again, requested to speak to Plaintiff.

20.     Plaintiff's husband informed Defendant that Plaintiff was unable to come to the telephone as Plaintiff had just undergone surgery, a few hours earlier, on that same day.

21.     Defendant responded to Plaintiff's husband's statements by, again, requesting to speak to Plaintiff.

22.     Plaintiff's husband informed Defendant that Plaintiff had undergone surgery as a result of Plaintiff having a miscarriage.

23.     Plaintiff's husband further informed Defendant that neither he nor Plaintiff could speak to Defendant at that time as they were under considerable distress from having to deal with Plaintiff having a miscarriage.

24.     Defendant responded to Plaintiff's husband's comments by stating "I do not care about [Plaintiff's] medical condition."

25.     Defendant then stated to Plaintiff's husband "I only care about [Plaintiff's] financial condition."

26.     Defendant then accused Plaintiff of not paying her bills.

27.     Defendant then, again, requested that Plaintiff's husband tell Plaintiff to pick up the telephone.

28.     Again, Plaintiff's husband reiterated to Defendant that neither he nor Plaintiff could speak to Defendant at that time.

29.     Plaintiff's husband informed Defendant that he and Plaintiff had just lost their child and could not emotionally handle speaking to Defendant.

30.     Defendant then persisted in asking Plaintiff's husband to have Plaintiff speak to Defendant on the telephone call.

31.     Defendant then shouted at Plaintiff's husband and stated "[j]ust get [Plaintiff] to come to the telephone."

32.     Plaintiff's husband had to end the telephone call with Defendant in order to stop Defendant's duly authorized representative from screaming at Plaintiff's husband to have Plaintiff speak to Defendant on the telephone.

33.     Plaintiff's husband informed Plaintiff of the contents of the aforesaid telephone conversation with Defendant.

34.     On or about November 15, 2011, subsequent to Plaintiff's husband having engaged in the aforesaid telephone call with Defendant, Defendant initiated another telephone call to Plaintiff in a further attempt to collect the debt Plaintiff allegedly owed.

35.     In or around November 2011, subsequent to November 15, 2011, through in or around January 2012, and on multiple occasions therein, Defendant continued to initiate telephone calls to Plaintiff in a further attempt to collect the debt she allegedly owed.

36.     During the aforesaid time period, on multiple occasions, Defendant initiated the aforesaid telephone calls to Plaintiff at her parents' residence.

37.     During the aforesaid time period, Plaintiff was residing at her parents' residence.

38.     During the course of the aforesaid time period, on multiple occasions therein, Plaintiff's husband, again, told Defendant, that neither he nor Plaintiff could speak to Defendant as they had just lost their child as a result of Plaintiff having a miscarriage.

39.     On multiple occasions, during the aforesaid time period, when Plaintiff's husband informed Defendant of the reason why neither he nor Plaintiff could speak to Defendant, Defendant's duly authorized representatives persisted in asking to speak to Plaintiff regarding the debt she allegedly owed.

40.     Plaintiff's husband informed Plaintiff of the contents of the aforesaid telephone conversations with Defendant.

41.     Defendant's statements to Plaintiff, as delineated above, are neither statements made in an effort to seek payment from Plaintiff nor statements made to further the collection efforts of Defendant.

42.     The natural consequence of Defendant's statements to Plaintiff was to unjustly condemn and vilify Plaintiff for her non-payment of the debt she allegedly owed.

43.     The natural consequence of Defendant's statements to Plaintiff was to produce an unpleasant and/or hostile situation between Defendant and Plaintiff.

44.     The natural consequence of Defendant's statements to Plaintiff was to cause Plaintiff mental distress.

45.     The nature consequence of Defendant's statements to Plaintiff was to cause Plaintiff to feel hurt and upset that Defendant did not acknowledge the traumatic experience that Plaintiff had undergone.

46.     The nature consequence of Defendant's statements to Plaintiff was to cause Plaintiff to became emotionally distressed and humiliated that Defendant did not acknowledge the traumatic experience that Plaintiff had undergone.

47.     From in or around November 2011 through in or around January 2012, and on multiple occasions therein, Defendant initiated telephone calls to Plaintiff at her parents' residence in a further attempt to collect a debt Plaintiff allegedly owed wherein Plaintiff engaged in multiple telephone conversations with Defendant.

48.     During the aforesaid telephone calls between Plaintiff and Defendant, on multiple occasions, Plaintiff informed Defendant that it was inconvenient for her to receive telephone calls from Defendant at her parents' residence.

49.     During the aforesaid time period, on multiple occasions, Plaintiff informed Defendant that Defendant's telephone calls to Plaintiff at her parents' residence were harassing and disturbing.

50.     During the aforesaid time period, on multiple occasions, Plaintiff informed Defendant that if Defendant continued to initiate telephone calls to Plaintiff at her parents' residence that Plaintiff's parents would make Plaintiff move out of their residence.

51.     During the aforesaid time period, on multiple occasions, Plaintiff specifically requested to Defendant  that it cease contacting Plaintiff at her parents' residential telephone number.

6

52.     During the aforesaid time period, on multiple occasions, Plaintiff requested that Defendant contact her on Plaintiff's cellular telephone number instead of contacting her at her parents' residential telephone number.

53.     During the aforesaid time period, on multiple occasions, Plaintiff provided Defendant with her cellular telephone number so that Defendant could contact Plaintiff at said number.

54.     On multiple occasions, during the aforesaid time period, after Plaintiff informed Defendant that its telephone calls to her at her parents' residence were disturbing, Defendant told Plaintiff she was claiming that Defendant was disturbing her so that she could avoid making a payment to Defendant.

55.     During the aforesaid time period, on multiple occasions, Defendant informed Plaintiff that it would continue to contact Plaintiff at the telephone number at her parents' residence.

56.     On multiple occasions, during the aforesaid time period, Defendant's duly authorized representatives informed Plaintiff that Defendant did not care if Plaintiff did not want to receive telephone calls at her parents' residence and that Defendant would continue to contact Plaintiff at her parents' residence.

57.     Despite Plaintiff having advised Defendant, on multiple occasions, that it was inconvenient for her to receive telephone calls from Defendant at her parents' residential telephone number, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at her parents' residential telephone number.

58.     Despite Plaintiff having advised Defendant, on multiple occasions, to cease contacting her on her parents' residential telephone number, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at her parents' residential telephone number.

59.     Despite Defendant being cognizant of an alternative telephone number at which it could contact Plaintiff, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at her parents' residential telephone number.

60.     Despite Defendant having no authorization from Plaintiff to contact her at Plaintiff's parents' residential telephone number, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at her parents' residential telephone number in a further attempt to collect the debt Plaintiff allegedly owed.

61.     From in or around November 2011 through in or around January 2012, and on multiple occasions therein, at the time Defendant initiated telephone calls to Plaintiff at her parents' residential telephone number, Defendant left multiple voicemail messages for Plaintiff in a further attempt to collect the debt Plaintiff allegedly owed.

62.     During the course of the aforesaid time period, on multiple occasions, Defendant left voicemail messages for Plaintiff on the answering machine at Plaintiff's parents' residence.

63.     During the aforesaid time period, Plaintiff's parents' outgoing voicemail message at Plaintiff's parents' residence did not identify Plaintiff by name such that any caller could reasonably conclude that only Plaintiff would be listening to voicemail messages.

8

64.     During the aforesaid time period, at the time Defendant left the aforesaid voicemail messages for Plaintiff, Defendant's duly authorized representatives stated they were calling for Plaintiff.

65.     During the aforesaid time period, at the time Defendant left the aforesaid voicemail messages for Plaintiff, Defendant's duly authorized representatives stated they were debt collectors.

66.     During the aforesaid time period, at the time Defendant left the aforesaid voicemail messages for Plaintiff, Defendant's duly authorized representatives identified Defendant as the company from which they were calling.

67.     During the aforesaid time period, on multiple occasions, Plaintiff heard the voicemail messages that Defendant left for Plaintiff on her parents' residential answering machine.

68.     During the aforesaid time period, on multiple occasions, Plaintiff's parents heard the voicemail messages that Defendant left for Plaintiff on her parents' residential answering machine.

69.     Plaintiff did not consent to Defendant communicating with third-parties.

70.     From in or around November 2011 through in or around January 2012, and on multiple occasions therein, at the time Defendant initiated telephone calls to Plaintiff at her parents' residence, in an attempt to collect a debt she allegedly owed, Defendant engaged in additional telephone conversations with Plaintiff's husband.

71.     During the course of the aforesaid time period, on multiple occasions, Plaintiff's husband informed Defendant that its telephone calls to Plaintiff at her parents' residence were disturbing and harassing to Plaintiff.

72.     During the course of the aforesaid time period, on multiple occasions, Plaintiff's husband informed Defendant that Plaintiff did not want to receive telephone calls from Defendant at Plaintiff's parents' residence.

73.     During the course of the aforesaid time period, on multiple occasions, Plaintiff's husband informed Defendant that Plaintiff wanted Defendant to contact Plaintiff on her cellular telephone number and not at the telephone number at Plaintiff's parents' residence.

74.     Again, despite Defendant having been advised, on multiple occasions, that it was inconvenient for Plaintiff to receive telephone calls from Defendant at Plaintiff's parents' residential telephone number, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at her parents' residential telephone number.

75.     Again, despite Defendant having been advised, on multiple occasions, to cease contacting Plaintiff on her parents' residential telephone number, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at Plaintiff's parents' residential telephone number.

76.     Again, despite Defendant being cognizant of an alternative telephone number at which it could contact Plaintiff, from in or around November 2011 through in or around January 2012, Defendant proceeded to initiate multiple additional telephone calls to Plaintiff at Plaintiff's parents' residential telephone number.

77.     The repetitive calls made by Defendant to Plaintiff at her parents' residence were disturbing, harassing, and had the effect of making Plaintiff feel concerned and suspicious about answering the telephone.

78.    In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

a.    Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

b.    Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and stating that the consumer owes any such debt in violation of 15 U.S.C. §1692b(2);

c.    Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(1);

d.    Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

e.    Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

f.    Used obscene or profane language or language the natural consequence of which is to abuse the hearer or reader in violation of 15 U.S.C. §1692d(2);

g.    Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

h.    Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

79.    As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.    JURY DEMAND

80.    Plaintiff hereby demands a trial by jury on all issues so triable.

81.     The Plaintiff, JESSICA THOMPSON, by and through her attorneys, Larry P. Smith & Associates, Ltd., hereby respectfully requests that the trial of this matter proceed in Kansas City.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JESSICA THOMPSON, by and through her attorneys, respectfully prays for judgment as follows:

a.     All actual compensatory damages suffered;

b.     Statutory damages of $1,000.00;

c.     Plaintiff's attorneys' fees and costs;

d.     Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**JESSICA THOMPSON**

By:  ___ s/ D. Matthew Durgin _____
Attorney for Plaintiff

Dated: March 6, 2012
D. Matthew Durgin (Atty. No.: 21557)
LARRY P. SMITH & ASSOCIATES, LTD.
8508 W. 90th Terrace
Overland Park, KS 66212
Telephone:  (913) 908-2313
                    (913) 871-4170
Facsimile:    (888) 418-1277
E-Mail:       mdurgin@smithlaw.us